**J.E. HOETGER & CO., a Michigan corporation, Plaintiff,**

v.

**Ruben ASENCIO, Jr., individually, and Merrill Lynch, Pierce, Fenner & Smith, Inc., a Delaware corporation, jointly and severally, Defendants.**

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a Delaware corporation, Counter-Plaintiff,**

v.

**J.E. HOETGER & CO., a Michigan corporation, Counter-Defendant.**

Civ. A. No. 82–72798.

United States District Court, E.D. Michigan, S.D.

March 22, 1983.

As Revised March 24, 1983.

Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier, Elwood S. Simon, Lawrence M. Dudek, Southfield, Mich., for plaintiff.

Butzel, Keidan, Simon, Myers & Graham, Douglas G. Graham, Dennis K. Egan, Detroit, Mich., for defendants.

## AMENDED OPINION

FEIKENS, Chief Judge.

On September 7, 1979, plaintiff Hoetger opened a commodity account with defendant Merrill Lynch. This account was serviced by Merrill Lynch's representative, co-defendant Ruben Asencio.

Hoetger is claiming, *inter alia,* that Asencio failed to register as an associated person, as is required by 7 U.S.C. § 6k (§ 6k) of the Commodity Exchange Act (CEA), and that defendants breached their duty to find "suitable" investments for Hoetger. Defendants move for summary judgment as to these claims, contending that there is no private cause of action under § 6k, and that there is no suitability requirement under CEA.

As to the first claim, Hoetger is seeking to establish a private cause of action for rescission of contract based on alleged violations of § 6k, which provides in pertinent part:

> (1) It shall be unlawful for any person to be associated with any futures commission merchant . . . as a partner, officer or employee . . . in any capacity which involves (i) the solicitation or acceptance of customers' orders (other than in a clerical capacity) or (ii) the supervision of any person or persons so engaged, unless such person shall have registered, under this chapter, with the [Commodity Futures Trading] Commission . . . and it shall be unlawful for any futures commission merchant . . . to permit such a person to become or remain associated with him in any such capacity if such futures commission merchant . . . knew or should have known that such person was not so registered * * *

The Act is silent, on its face, as to whether private causes of action lie for its violation. In support of such actions, Hoetger relies primarily on the Supreme Court's recent decision in *Merrill Lynch, Pierce,* *Fenner & Smith, Inc. v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), which allowed private actions under CEA. While it is true that *Curran* allowed such actions, the Court did not find that private actions exist under any and all sections of the Act, but merely that actions could be brought under five discrete sections of the Act.

The Court's holding in *Curran* was based primarily on the fact that in 1974, when CEA was amended, there was a pre-existing cause of action recognized by the courts under the five sections in question. The majority noted that such pre-existing law was a part of the contemporary legal context at the time of amendment, and that Congress was presumed to have known of that law. From this the majority concluded that Congress had, in effect, ratified pre-existing law by failing to expressly alter it.

In this case, it is admitted that there was no pre-existing registration requirement under CEA prior to 1974. Therefore, there could not have been a pre-existing private cause of action under § 6k. For this reason, the Supreme Court's holding in *Curran* is largely inapposite here. The true issue here is whether Congress intended to create a private cause of action when it instituted a registration requirement in 1974.

■ In determining whether a private cause of action exists under any legislation, I am bound by the standards set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and modified in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In *Cort,* the Court set forth four factors which must be examined in determining whether private actions lie:

> [1] [I]s the Plaintiff "one of the class for whose especial benefit the statute was enacted", . . . [2] is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . [3] is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for plaintiff? . . . [and (4)] is the cause of action one traditionally relegated to state law,

in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2087. In *Touche* the Court held that these factors are not necessarily entitled to equal weight in the considerations, and stated that the central inquiry remained one of determining whether "Congress intended to create, either expressly or by implication, a private cause of action." 442 U.S. at 575, 99 S.Ct. at 2488.

Here there is nothing to show an express intent, and very little to show an implied intent, to create a private cause of action under § 6k. In support of such action, plaintiff argues that a private action was recognized under a similar registration requirement of the Security Exchange Act of 1934, 15 U.S.C. §78o(a)(1), and that Congress must be presumed to have known of that law and to have expected the registration requirement under § 6k to be treated in a like manner. This contention has one major flaw; it fails to take account of the fact that the Security Exchange Act has specific language which provides that contracts entered into in violation of the Act's terms would be "void", 15 U.S.C. 78 cc(b). Courts which have recognized a private cause of action under the registration requirements of the Security Exchange Act did so principally because of this provision. *Eastside Church of Christ v. National Plan, Inc.,* 391 F.2d 357 (5th Cir.1968). CEA does not have a similar "void" provision, and thus analogies to the Security Exchange Act are not compelling.

Plaintiff also argues that a private cause of action should be implied under § 6k because to do so would strengthen CEA, and thus further the policy of the Act. This contention is questionable in light of the fact that the Act already provides for tough civil and criminal penalties for violations of its provisions.[1] The provision of similar remedies under the Investment Advisors Act of 1940, 15 U.S.C. § 80b–1 *et seq.,* was considered significant by the Supreme Court in finding no private cause of action under certain sections of that Act. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). In so holding the Court stated "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Id.* at 19, 100 S.Ct. at 246. Moreover, the mere fact that a private cause of action will arguably promote the public interest does not provide compelling evidence of Congress' intent to create such a cause of action.

On the other hand, there are a number of factors that militate against the finding of a private cause of action under § 6k. First and foremost is the fact that there is absolutely no evidence in the legislative history of CEA which shows an intent to create a private cause of action. In fact, the dissent in *Curran* compellingly argues that there is no legislative intent to create a private cause of action under any of CEA's provisions, and that the pre-1974 cases which held otherwise were incorrectly decided. The dissent further argues that the only reason for finding a continuing cause of action under certain sections of CEA is that Congress did not provide otherwise in the face of the existing law in 1974 (a reason the dissent does not find adequate). In the case of § 6k's registration requirement, there was no pre-existing law in 1974, so there is even less evidence of legislative intent.

A second factor which weighs against the finding of a private cause of action here is the harshness of the proposed result. If rescission were to be allowed predicated solely on a failure to register, it would have the effect of imposing potentially astronomical liabilities on brokers without any showing of damages or causation. In this regard it should be noted that in *Curran,* the Supreme Court seemed to contemplate the

---

1. For example, 7 U.S.C. § 9 gives the Commission the power to impose civil penalties of up to $100,000 for violation of any provision of the Act, and 7 U.S.C. § 13(c) makes the violation of certain of CEA's provisions (including § 6k) a criminal offense punishable by fines of up to $100,000 and imprisonment of up to one year.

necessity of a showing of causation, 102 S.Ct. at 1837, and of injury, 102 S.Ct. at 1847. Such liability would be even more Draconian in light of the ample civil and criminal penalties expressly made available for violations of CEA's requirements. I would hesitate to impose such a heavy burden on commodities brokers without a clear showing of legislative intent to that effect.

A final consideration is the fact that courts have looked at registration requirements under other regulatory schemes, and found that they do not support private causes of action. In *Hayden v. Walston,* 528 F.2d 901 (9th Cir.1975), the United States Court of Appeals for the Ninth Circuit found no private cause of action in the registration requirement of the National Association of Securities Dealers, saying:

> [W]e are clear that the registration provision is not the type of association rule from which a private cause of action should be implied.... While registration inures to the benefit of the public generally by assuring professional competence, the requirement does not set a duty with respect to a particular securities transaction the breach of which tortiously interferes with the customer's rights. The customer may receive thoroughly competent service from an unregistered salesman, and be unharmed by violations of the rule. If not, the customer has adequate remedies for specific conduct under existing law.

*Id.* at 902. Similarly, the Ninth Circuit recently narrowed the scope of private causes of action under the registration requirement of the Security Exchange Act. *Securities and Exchange Commission v. Seaboard Co.,* 677 F.2d 1301 (9th Cir.1982).

█ In light of the above, I find that there is no private cause of action, either express or implied, under § 6k of CEA. For this reason defendants' motion to dismiss plaintiff's claim under § 6k is granted.

█ As to plaintiff's claim resting upon a breach of duty to find suitable investments, I also find that no cause of action exists. Plaintiff cites no authority for the existence of a duty of suitability under CEA. He merely states that there is such a duty under the Security Exchange Act and speculates that a similar duty may evolve under CEA. However, there is authority directly contrary to this contention. In *Myron v. Hauser,* 673 F.2d 994 (8th Cir.1982), the Court of Appeals for the Eighth Circuit recently addressed this issue and stated: "Because the CFTC apparently has not developed any suitability standard for commodity options trading, the violation could not properly [be predicated on a breach of that duty]." 673 F.2d at 1005. That decision went on to describe the suitability requirement as "non-existent." *Id.* at 1006. Furthermore, the Commodity Futures Trading Commission, the agency charged with enforcing CEA, recently addressed this question and stated:

> At this juncture we wish to note that the Commission has never adopted any rule of suitability governing the commodity broker-customer relationship. Although a suitability rule was once proposed by the Commission as a customer protection rule, *see* 42 Fed.Reg. 44742, 44743–45 (1977), it was not adopted. *See* 43 Fed. Reg. 31886, 31889 (1978) ... To the extent that the judge in his decision below suggests that suitability principles are implicit in any of the provisions of the Act, the Commission does not adopt such reasoning.

*Avis v. Shearson Hayden Stone, Inc.,* [1980–1982 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 21,379 at 25,830 (CFTC Docket No. R 77–219, April 13, 1982).

I thus conclude that there is no recognized duty of suitability under CEA. Plaintiff's claims based upon a breach of such duty are, therefore, dismissed. An appropriate order may be submitted.