In re WORLDS OF WONDER
SECURITIES LITIGATION.

No. C 87–5491 SC.

United States District Court,
N.D. California.

July 29, 1988.

David Gold, Paul Bennett, Alan Plutzik, San Francisco, Cal., Ernest Kaufmann, Kaufman, Malchman, Kaufmann & Kirby, Los Angeles, Cal., Mark Reiff, John Taylor, Taylor & Stanley, San Francisco, Cal., Stephen T. Rodd, Abbey & Ellis, New York City, Jules Brody, Stull, Stull & Brody, New York City, Sherrie Savett, Lawrence Deutsch, Berger & Montague, Philadelphia, Pa., Saveri & Saveri, Guido Saveri, San Francisco, Cal., Irving Malchman, Kaufman, Malchman, Kaufmann & Kirby, Joseph Tabacco, Jr., Joseph Weiss, Curtis Trinko, New York City, for plaintiff.

Bruce Vanyo, Daniel Bergeson, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., Robin C. Gibbs, Gibbs & Ratliff, Houston, Tex., Philip Rotner, Richard North Patterson, Brenda Woodson, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., James Tracy, Deloitte, Haskins & Sells, New York City, J. Clifford Gunter III, Bracewell & Patterson, Houston, Tex., William Alderman, Orrick, Herrington & Sutcliffe, John Keker, Keker & Brockett, San Francisco, Cal., Robert Harwood, Goodkind, Wechsler, Labaton & Rudoff, P.C., New York City, for defendant.

## ORDER RE: MOTIONS TO DISMISS

CONTI, District Judge.

Plaintiffs bring this action on behalf of all purchasers of Worlds of Wonder, Inc. ("WOW") securities during the period from and including February 5, 1987 and November 9, 1987. Plaintiffs allege seven substantive claims: (1) violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder ("10b–5"); (2) violation of section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t ("Section 20"); (3) fraud and deceit; (4) negligent misrepresentation; (5) violation of section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ("Section 11"); (6) violation of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l (2) ("Section 12(2)"); (7) violation of section 15 of the Securities Act of 1933, 15 U.S.C. § 77o ("Section 15"). This matter is currently before the court on defendants' separate motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

### I. BACKGROUND

This action arises out of the demise of Worlds of Wonder, Inc. ("WOW"), a toy manufacturer based in Fremont, California. WOW was founded in 1985 and specialized in the design, manufacturing and marketing of technologically sophisticated toys. In 1986, WOW had an immensely successful year, spurred on by sales of its two most popular products, "Teddy Ruxpin", a talking teddy bear, and "Laser Tag", an electronic toy gun. This success was short-lived, however, and in December of 1987 WOW filed for protection under Chapter 11 of the bankruptcy laws.

In January of 1988, the plaintiffs and defendants in several related lawsuits involving WOW securities entered into a stipulation consolidating their actions and es-

tablishing a briefing schedule. The court approved the stipulation, and on February 5, 1988 the court ordered the actions consolidated. On March 7, 1988, plaintiffs filed their "Consolidated Amended and Supplemental Class Action Complaint for Violations of the Federal Securities Laws, Common Law and State Law" (hereinafter referred to as the "Complaint").

The Complaint names the following officers of WOW as defendants: Angelo M. Pezzani ("Pezzani"), former President and Chief Operating Officer; Donald D. Kingsborough ("Kingsborough"), former Chairman of the Board and Chief Executive; and Richard B. Stein ("Stein"), former Executive Vice President and Chief Financial Officer (hereinafter referred to collectively as the "Officers"). The Complaint also names two directors of WOW as defendants, John B. Howenstine ("Howenstine") and Barry H. Margolis ("Margolis"). The Complaint further names the public accounting firm of Deloitte Haskins & Sells ("DH & S") and the underwriting and securities brokerage firm of Smith Barney, Harris Upham & Co. ("Smith Barney") as defendants.

Since this matter is currently before the court on motions to dismiss, the court assumes as true the facts alleged by the plaintiffs. *See Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir.1982).

The Complaint alleges that the defendants engaged in a conspiracy with the purpose and effect of "artificially inflating the market prices of WOW's common stock and debentures and enabling the debentures to be foisted upon the public securities market." Complaint ¶ 29. In furtherance of this conspiracy defendants "recklessly made or caused to be made various false and misleading statements of material facts respecting WOW." *Id.* Each of the defendants aided and abetted one another's wrongful conduct. ¶ 31. The defendants also engaged in insider trading. ¶¶ 31, 32.

The "individual defendants" made "highly optimistic and bullish statements respecting WOW" which were "materially false and misleading", including: that 1987 would be a big year for WOW [¶ 33(a)];

that the estimate for sales in 1987 was $300 million, and $500 million for the next year [¶ 33(b)]; that WOW was withdrawing an intended public offering because of market conditions [¶ 33(c)]; that while earnings dropped by 86% for the fourth quarter ending in March 1987, analysts were "well-informed" in projecting WOW's 1988 earnings to be about $34 million [¶ 33(d)]; and that WOW's stock was undervalued [¶ 33(e)].

In June of 1987 WOW issued a prospectus and registration statement which was "materially false and misleading" and had the "purpose and effect of inflating the price of WOW's stock." ¶ 33(f). This prospectus discussed WOW's business condition in "positive terms and disclosed no insoluble problems or difficulties." ¶ 36(a). The prospectus also failed to disclose that the debentures offered were speculative and involved a high degree of risk. ¶ 36(b). Smith Barney was the underwriter of the June 1987 offering [¶ 18(b)], and sold to the investing public, including plaintiffs, all debentures of WOW which were sold during this public offering [¶ 92].

In June of 1987 the President of WOW sent a letter to shareholders which "boasted" of WOW's progress while WOW was "suffering its worst fiscal quarter since WOW's inception." ¶ 33(g). Defendants further minimized WOW's problems by making "optimistic" statements which "continued to falsely inflate the prices of WOW's securities." ¶¶ 33(h) and (i), 34. Also, the defendants failed to release results of WOW's second quarter ending in September of 1987 although they had represented that they would. ¶ 43.

WOW's accountants, DH & S, knew that WOW was suffering business difficulties but concealed this from WOW stockholders and gave WOW a "clean and unqualified opinion or report with respect to the financial statements of WOW." ¶¶ 48–51. DH & S "falsely represented" that its financial examination of WOW was in accordance with generally accepted accounting principles. ¶¶ 51–53. DH & S's acted "knowingly or in such a reckless manner as to consti-

tute a deceit and fraud upon plaintiffs and the members of the class." ¶ 54.

## II. MOTIONS TO DISMISS

Defendants Margolis, Howenstine, Officers, DH & S, and Smith Barney have all separately moved this court for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). While each of the defendants have fashioned their own arguments in response to the allegations, all the defendants argue that the Complaint fails to state proper claims under federal securities law and fails to plead fraud with particularity. Plaintiffs oppose all the defendants' motions. The court will summarize each of defendants' motions separately.

### A. *Defendant Officers' Motion to Dismiss*

Defendant Officers argue that plaintiffs have failed to state a Section 11 claim against them because: (1) contrary to plaintiffs' assertions, the prospectus warned potential purchasers of the risks involved in WOW debentures; (2) there was no duty to disclose the allegedly omitted facts. The Officers argue that plaintiffs have failed to state a Section 12(2) claim against them because there are no allegations sufficient to establish that the Officers were "sellers" of the securities at issue. The Officers further argue that plaintiffs' 10b–5 claim must be dismissed because it fails to plead fraud with particularity and fails to plead scienter. The Officers also argue that plaintiffs' negligent misrepresentation claims should be dismissed because they are based on alleged omissions rather than affirmative misstatements.

### B. *Howenstine's Motion to Dismiss*

Howenstine argues that plaintiffs' 10b–5 claim against him must be dismissed because it fails to plead scienter. Howenstine argues that the Section 20(b) claim against him should be dismissed because plaintiffs have failed to adequately plead that he was a "controlling person" within the meaning of federal securities laws. Howenstine argues that plaintiffs have not alleged any facts to indicate that his re-

liance on information provided by WOW was unreasonable, and therefore the state law claims should be dismissed. Howenstine also argues that the pleadings do not demonstrate that he was a seller of securities and that plaintiffs' Section 12(2) claim should therefore be dismissed. Howenstine further argues that the complaint should be dismissed for failure to plead fraud with particularity.

### C. *Margolis' Motion to Dismiss*

Margolis argues that the complaint should be dismissed because it fails to adequately distinguish between the responsibilities of the various defendants. Margolis argues that many of the statements alleged to have been misleading are not actionable, and that plaintiffs have failed to allege the specific place, time, nature or specific content of the alleged fraud. Margolis argues plaintiffs' 10b–5 claim against him is defective because it does not plead scienter and because the insider trading allegations against him are vague.

### D. *DH & S' Motion to Dismiss*

DH & S argues that plaintiffs have made only "boilerplate" allegations against it, and that plaintiffs have misconstrued DH & S' role as WOW's auditor. DH & S argues that plaintiffs' claims against it for aiding and abetting and conspiracy are defective because they fail to allege scienter or demonstrate what substantial assistance DH & S allegedly gave the conspiracy. DH & S also argues that plaintiffs' have failed to plead fraud with particularity in reference to their allegations that the audit report was fraudulent. DH & S argues that the Section 12(2) claim against it should be dismissed because DH & S is not a seller of securities within the meaning of the statute. DH & S further argues that it cannot be held liable under Section 11 for misstatements in the textual portions of the registration statement.

### E. *Smith Barney's Motion to Dismiss*

Smith Barney argues that plaintiffs have failed to plead any specific wrongdoing on the part of Smith Barney. Smith Barney

also argues that plaintiffs have impermissibly pled allegations on "information and belief." Smith Barney further argues that plaintiffs have failed to distinguish between the different roles each defendant played in the alleged fraud. Smith Barney asserts that plaintiffs' 10b–5 claim against it is defective because plaintiffs have failed to allege actionable misrepresentations or omissions by Smith Barney. Smith Barney also maintains the 10b–5 claim fails to properly allege scienter, reliance and causation. Smith Barney also maintains that it is not a proper defendant under Sections 11 or 12(2).

### F. *Plaintiffs' Opposition to the Motions*

Plaintiffs have filed a single consolidated brief which responds to all of the defendants' motions. Plaintiffs argue that the misrepresentations and omissions alleged are actionable. Plaintiffs assert that they have identified specific statements which were fraudulent. They also argue that they have adequately pled the circumstances which render the alleged omissions actionable and need not link each omission to a specific affirmative statement. Plaintiffs contend they have satisfied the requirements of Rule 9(b). They argue they need not plead scienter with particularity and that the remaining allegations are sufficient to give defendants fair notice of their alleged wrongdoing. Plaintiffs argue that their Section 11 claim is not subject to dismissal on the grounds that the prospectus disclosed all material risks; they contend this is an issue of fact which must be resolved in their favor for the purpose of these motions. Plaintiffs also argue that their Section 12(2) claim is proper and that defendants are proper defendants. Plaintiffs further argue that Margolis and Howenstine are "controlling persons" under Section 15. Finally, plaintiffs contend that the Officer defendants may be held liable for the tort of negligent misrepresentation to all persons who reasonably and foreseeably rely on their statements and conduct.

### III. LEGAL STANDARD

The Ninth Circuit has summarized the standards for motions to dismiss:

... a complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d 1982).

*Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

Fed.R.Civ.P. 9(b) provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir.1973). To satisfy this requirement, the plaintiff must state the time, date and specific content or nature of the fraudulent representations or omissions. *Misc. Service Workers, Etc. v. Philco–Ford Corp.,* 661 F.2d 776, 782 (9th Cir.1981). Conclusory allegations that defendants' conduct was fraudulent or in violation of federal securities laws are insufficient. *Segal v. Gordon,* 467 F.2d 602, 606–8 (2d Cir.1972); *see also, Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985); *and, Hokama v. E.F. Hutton & Co., Inc.,* 566 F.Supp. 636, 645–646 (C.D.Cal.1983). In addition, the plaintiff must satisfy the above requirements for each defendant. *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 637–39 (N.D. Cal.1980); *see also, Bruns v. Ledbetter,* 583 F.Supp. 1050, 1052 (S.D.Cal.1984). For example, the plaintiff must distinguish among those he sues and "enlighten each defendant as to his or her part in the alleged fraud." *See Bruns,* 583 F.Supp. at 1052.

Allegations based on "information and belief" do not satisfy the particularity requirement of Fed.R.Civ.P. 9(b) unless the

complaint sets forth the facts on which the belief is founded. *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972); *Duane v. Altenburg,* 297 F.2d 515, 518–19 (7th Cir. 1962); *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 638–9 (N.D.Cal.1980). The requirement that supporting facts be pleaded applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party. *Wayne Inv. v. Gulf Oil Corp.,* 739 F.2d 11, 14 (1st Cir.1984); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

## IV. DISCUSSION

The parties in this matter have submitted numerous briefs to this court addressing many important issues involved in securities litigation. Both the defendants and the plaintiffs have argued persuasively. The court does not feel it is necessary to respond, point by point, to every argument or issue raised by the parties. In setting out its decision, the court will concentrate on what it views as the primary issues raised by the parties.

### A. *Fraud Allegations*

Plaintiffs' Complaint states:

Plaintiffs, for their Consolidated Amended and Supplemental Complaint, allege upon information and belief, except as to the allegations which pertain to the named plaintiffs and their counsel, which are based upon personal knowledge. Plaintiffs' information and belief is based upon, *inter alia,* investigation made by plaintiffs by and through their attorneys.

Complaint, p. 1. Plaintiffs' statement that their information and belief is based upon "investigation made by plaintiffs by and through their attorneys" does not relieve them of the burdens imposed by Rule 9(b). Nor does such a statement demonstrate sufficiently the facts upon which plaintiffs' belief is founded. Plaintiffs are obligated to allege their claims with sufficient detail to demonstrate that their complaint is grounded in fact.

After reviewing the allegations of the complaint, the court finds that plaintiffs have failed to comply with the specificity requirement of Rule 9(b). Plaintiffs have asserted very broad allegations against all the defendants including violations of 10b–5, conspiracy to commit securities fraud, and aiding and abetting in securities fraud. ¶¶ 29, 30. The details of these allegations, however, fail to sufficiently apprise the different defendants of the basis of their potential liability.

Plaintiffs have named as defendants people and entities with different relationships to WOW. The defendants include corporate officers and directors, accountants and underwriters. It is not enough for plaintiffs to make group allegations in such a situation because collective responsibility is not self-evident. Each defendant is entitled to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with. If group responsibility is based on the joint issuance of a statement (as plaintiffs seem to suggest in paragraphs 29 and 33) then plaintiffs must give some detail demonstrating collective responsibility. Conclusory allegations that "defendants and each of them, conspired and knowingly or recklessly made or caused to be made various false and misleading statements of material facts respecting WOW" [¶ 29] are insufficient. Even when plaintiffs do identify the content and source of particular statements (as in paragraph 33) it is not at all clear how defendants such as DH & S and Smith Barney "caused" such statements to be made.

Plaintiffs are correct in stating that under Rule 9(b) state of mind may be averred generally. This does not mean, however, that plaintiffs can allege, on information and belief, that a defendant knew that another's action was fraudulent, and that this knowledge rendered an otherwise neutral act fraudulent. Such an allegation must be based on personal knowledge, or else plaintiffs must allege sufficient detail to demonstrate that the claim is grounded in some facts. Absent such personal knowledge or detailed pleading, conclusory allegations of

conspiracy, aiding and abetting and violations of 10b–5 are defective.

The court also notes that when plaintiffs have offered the specific time, place and date of the statement they often fail to designate why such a statement was fraudulent. Paragraph 33 simply lists a series of statements with the preface that the statements were "materially false and misleading." The fraudulent nature of these statements, however, is not self-evident. The court therefore concludes that such pleading is defective.

For all these reasons, the court grants defendants' motions to dismiss the complaint for failure to comply with Fed.R. Civ.P. 9(b).

### B. *Section 11 Claim*

■■■ Section 11 permits purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registration statement. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983). Under this section plaintiffs need only show a material misstatement or omission to establish their prima facie case. *Id.* at 382, 103 S.Ct. at 687. Liability against the issuer of a security is virtually absolute, even for innocent misstatements. *Id.*

Plaintiffs allege that the June 4, 1987 Registration Statement and Prospectus contained false statements and omitted material facts. *See* ¶¶ 36, 39, 40–42. Some of the defendants have argued that plaintiffs' claims are not actionable because all the allegedly undisclosed risks were actually disclosed in the prospectus. The court rejects these arguments. The court has reviewed the Section 11 allegations along with the "Risk Factors" section of the prospectus. While it is clear that some of the risks which plaintiffs claim were omitted were in fact disclosed in the prospectus, the overall determination of whether there was adequate disclosure cannot be determined on the pleadings. Plaintiffs have sufficiently alleged that the prospectus was misleading. The court declines at this point in the litigation to sift through the individual allegations and decide, as a matter of law, which risks were actually disclosed.

■■■ Plaintiffs bring their Section 11 claim against all the defendants. Section 11 liability is limited to persons who sign the registration statement, directors of the issuer, underwriters of that issue, or experts named as preparing or certifying a portion of the registration statement. *In re Gap Stores Securities Litigation,* 457 F.Supp. 1135, 1143 (N.D.Cal.1978). Accountants cannot be held liable under Section 11 unless the misleading information can be expressly attributed to them. *See* 15 U.S.C. § 77k(a)(4); *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 643 (N.D.Cal. 1980). The court finds that the instant allegations are insufficient as to DH & S. In order to state a claim against DH & S, plaintiffs must identify the misleading statements in the portion of the prospectus which DH & S allegedly prepared or certified.

The court also finds that there is no "secondary liability" under Section 11. The court acknowledges that some courts have allowed claims for "aiding and abetting" a Section 11 claim. *See, e.g. Zatkin v. Primuth,* 551 F.Supp. 39 (S.D.Cal.1982). The court, however, is persuaded that the proper position is expressed in decisions such as *In re Equity Funding Corp. of America Securities Litigation,* 416 F.Supp. 161 (C.D.Cal.1976) and *McFarland, supra.* The court finds that to impose liability for "aiding and abetting" a Section 11 violation "would circumvent the express intent of Congress in enacting these statutes that proscribe narrowly defined conduct and allow relief from precisely defined parties." *In re Equity Funding, supra,* at p. 181.

For these reasons, the court grants DH & S motion to dismiss plaintiffs' fifth claim for relief (violation of Section 11) as to DH & S. The remaining motions to dismiss this claim for relief are denied.

### C. *Section 12(2) Claim*

■■ Section 12(2) imposes liability on persons who offer or sell securities by

means of any prospectus containing material misrepresentations or omissions; the statute provides that such a person shall be liable "to the person purchasing such security from him" for rescission or, if the plaintiff has sold the security, for damages. *See* 15 U.S.C. § 77*l* (2). The definition of a seller under Section 12 is one who "successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl,* — U.S. —, 108 S.Ct. 2063, 2079, 100 L.Ed.2d 658 (1988).

▮▮▮▮ The court finds that plaintiffs have sufficiently alleged that Smith Barney was a seller within the meaning of Section 12(2). *See* ¶ 92. As to the remaining defendants, plaintiffs have alleged that the individual defendants participated in activities conducted by all corporations, their officers and directors, prior to going public. *See* ¶¶ 77, 92(a)–(e). Plaintiffs allege that DH & S, along with the other defendants, "jointly finalized the Registration Statement and Prospectus and caused the Registration Statement to become effective as of June 4, 1987." ¶ 92(d). These allegations are not sufficient to establish that the remaining defendants were "sellers" within the meaning of Section 12. Instead plaintiffs must allege facts which demonstrate that defendants "solicited" the purchase of the securities at issue.

For these reasons, the court denies Smith Barney's motion to dismiss plaintiffs' sixth claim for relief (violation of Section 12(2)). The remaining defendants' motions to dismiss this claim for relief are granted.

### D. *Controlling Person Allegations*

▮▮▮▮ Sections 15 and 20 impose liability upon persons who control corporations committing violations of federal securities law. *See* 15 U.S.C. § 77*o*; 15 U.S.C. § 78t(a). The purpose of these sections is to impose liability on persons who might attempt to evade liability under common law principles utilizing "dummies" that would act in their place and under their control. *See Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1115–16 (5th Cir.1980). A controlling per-

son is liable for the acts of another if the controlling person acted in bad faith and directly or indirectly induced the conduct which violates the securities law. *Strong v. France,* 474 F.2d 747, 752 (9th Cir.1973). A director is not automatically liable as a controlling person; there must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed. *Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir.1984). Whether a defendant is a controlling person within the meaning of federal securities law is a question of fact. *Hilgeman v. National Insurance Company of America,* 547 F.2d 298, 302 (5th Cir.1977).

Plaintiffs allege that the individual defendants were controlling persons of WOW. ¶¶ 64, 95. To the extent that plaintiffs attempt to impose § 15 or § 20 liability on these defendants for alleged primary violations which this court has already dismissed under Rule 9(b) or 12(b)(6), the claims are dismissed. *See The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1046 (S.D.N.Y.1986). To the extent that plaintiffs seek to establish the defendants' liability for claims which the court has found to be viable, the court finds plaintiffs' allegations of control (e.g. ¶¶ 16, 64, 77, 92) to be adequate. Whether or not liability as a controlling person should be imposed cannot be otherwise resolved at the pleading stage.

For these reasons, the court grants Howenstine's and Margolis' motion to dismiss the second and seventh claims for relief (Sections 15 and 20) to the extent that secondary liability is premised on claims already dismissed in this order. To the extent that secondary liability is alleged for claims which survive this order, the motions are denied.

### E. *Negligent Misrepresentation Claim*

▮▮▮▮ Plaintiffs bring a pendent state law claim for negligent misrepresentation against all the defendants. *See* ¶¶ 73–75. There can be no liability for negligent misrepresentation unless the defendants owed a duty to plaintiffs to avoid the wrongdo-

ings. *Goodman v. Kennedy*, 18 Cal.3d 335, 342, 134 Cal.Rptr. 375, 556 P.2d 737 (1976). The determination of duty is a question of law. *Weirum v. RKO*, 15 Cal. 3d 40, 46, 123 Cal.Rptr. 468, 539 P.2d 36 (1975). The determination whether in a specific case a defendant will be held liable for negligent misrepresentation to plaintiffs not in privity involves the balancing of following factors: (1) the extent to which the transaction was intended to affect the plaintiffs; (2) foreseeability of the harm to plaintiffs; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy preventing future harm. *Goodman v. Kennedy, supra*, 18 Cal.3d at 342–3, 134 Cal.Rptr. 375, 556 P.2d 737. Under California law, an independent auditor owes a duty of care to reasonably foreseeable plaintiffs who rely on negligently prepared and issued unqualified audited financial statements. *International Mortgage Co. v. John P. Butler Accountancy Corp.*, 177 Cal.App.3d 806, 820, 223 Cal.Rptr. 218 (1986).

Plaintiffs have argued that the proper standard for measuring the defendants' liability is articulated in the *Butler* decision, *supra*. Plaintiffs argue that defendants are liable to any plaintiff who foreseeably and reasonably relied on their statements or conduct to his detriment. Defendants argue that a more restrictive standard of duty, as articulated in the *Goodman* decision, *supra*, is appropriate.

■ The court holds that plaintiffs' negligent misrepresentation claim against DH & S, as professional accountants and auditors, is governed by the *Butler* decision. Under California law, DH & S, as the independent auditor of WOW's financial statements, owed a duty to reasonably foreseeable plaintiffs who relied on DH & S' allegedly negligently prepared financial statements. Under this standard, the court finds that plaintiffs have adequately stated a claim against DH & S.

The *Butler* standard, however, should be interpreted as being limited to the particu-lar role of the independent auditor. Even if this court were to interpret *Butler* as articulating a broad "foreseeability" standard for all negligent misrepresentation claims, regardless of the factual circumstances, the opinion would not be of sufficient authority to displace the test formulated by the California Supreme Court in *Goodman*. If any conflict exists between the decisions, then this court is obligated to accept the reasoning of the higher court. The court therefore rules that plaintiffs' negligent misrepresentation claims against the remaining defendants are controlled by the *Goodman* decision.

■ There is no allegation that plaintiffs were in privity with the defendants. Therefore, after considering the factors listed by the California Supreme Court in *Goodman*, the court finds that plaintiffs have failed to state a claim against the remaining defendants. Plaintiffs have pled no facts which indicate the various remaining defendants intended, by their participation in the allegedly negligent making of statements, to affect the plaintiffs in this action. Nor do the allegations establish a "closeness" between the defendants' alleged negligence and harm caused to future third party shareholders. If a duty were imposed based on the allegations as presented, corporate officers and directors would face almost unlimited liability for non-intentional errors in their conduct. The court also determines that the federal and state securities laws provide comprehensive relief for plaintiffs, and that it is unnecessary for this court to expand liability in the manner suggested by plaintiffs. *See also In re Coleco Securities Litigation*, 591 F.Supp. 1488 (S.D.N.Y.1984).

For the above reasons, the court denies DH & S' motion to dismiss the fourth claim for relief (negligent misrepresentation). The motions of Smith Barney, Howenstine, Margolis and the Officer defendants to dismiss this claim are granted.

## V. ORDER

In accordance with the foregoing, the court orders that the complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

The court dismisses the complaint without prejudice; plaintiffs are granted sixty (60) days leave to file a further amended complaint *consistent with this order.*